[No. 2384.]

## JOHN SMITH *v.* THE STATE.

1. BURGLARY—INDICTMENT for burglary need not allege the want of the owner's consent to the entry of the house.

2. SAME—CONJOINT OFFENSES—CONSTITUTIONAL LAW—PRACTICE—CASE APPROVED.—Note the opinion sustaining the constitutionality of Article 712 of the Penal Code, which provides that, "if a house be entered in such manner as that the entry comes within the definition of burglary, and the person guilty of such burglary shall, after so entering, commit theft or any other offense, he shall be punished for burglary and also for whatever offense is so committed;" and approving the decision in Howard's case, 8 Texas Court of Appeals, 447, to the effect that when, besides burglary, another offense was committed in connection with it, separate prosecutions for each offense may be maintained.

3. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—A motion for new trial, unless it discloses proper diligence to secure on the trial the newly discovered evidence upon which it is based, is properly overruled.

APPEAL from the District Court of Hunt. Tried below before the Hon. J. A. B. Putman.

The conviction in this case was for the burglary of the hide store house of S. J. Dowling, in Hunt county, Texas, on the ninth day of April, 1886. A term of two years in the penitentiary was the punishment assessed against the appellant.

S. J. Dowling was the first witness for the State. He testified that he lived in Greenville, Hunt county, Texas, and knew the defendant, whom he pointed out in open court. The witness was the agent of Johnson & Harris, of Terrell, Texas, and had charge and management of their hide business at Greenville, his

hide house being situated just east of the public square. There were but two doors to that house—a front and a back door. That house was entered by some one on the night of April 22, or the morning of April 23, 1886. The witness, when he left the house on the evening of April 22, locked the front door and latched the back one on the inside. The only way the back door could be opened from the outside was to insert a knife blade or other such instrument through a cut and raising the cross bar. Mr. Lankford and Mr. Lowenstien, butchers in Greenville, sometimes went into the house by those means to deliver hides to the witness. They had the permission of the witness to so enter the house, but no one else had. The witness became responsible for the hides after receiving them. Lankford and Lowenstien would frequently bring hides into the house in the manner described, leave them on the scales and afterwards collect their value, by weight, from the witness. The delivery of the hides was considered complete when they were left on the witness's scales.

There were no green hides in the house when the witness left it on the night of April 22, 1886, though it contained several salted hides. The witness paid Mr. Lankford for the hide described in the indictment on the morning after it was delivered, and took a description of it. It was a large steer hide, branded CJH, connected. On Saturday morning, after settling for the. hide, the witness went into the hide house, but the hide could not be found in there. Some time during the day the defendant came to the witness and told him that he had a fine hide he wanted to sell the witness, and deliver it after night, as it was one he and Lowenstien had stripped from a cow they found dead in a bog. He brought the hide to witness on the evening of the twenty-third, and witness bought it. That hide was branded CJH, connected. It was the hide taken from the possession of the witness, as the agent for Johnson & Harris, on the night before. It was taken from witness's possession without his knowledge or consent. Defendant did not have the witness's consent to enter the hide house.

Cross examined, witness said that his control and management of Johnson & Harris's hide business in Greenville, was exclusive. Mr. Hornbeak had control and management of the saddle and harness business of Johnson & Harris in Greenville. The defendant worked for Mr. Lowenstien, and frequently went with Lowenstien to deliver hides in the hide house. Lowenstien

had authority to go into the hide house, in person, to deliver hides.

Charles Lankford testified, for the State, that he killed a wart bellied brindle steer, branded CJH, connected, on the twenty-second or twenty-third day of April, 1886, and either on the night of the killing or on the next morning he sent the hide to Johnson & Harris's hide house by Aaron Freeman, who worked for witness. Witness bought the steer from Doctor C. J. Huntley. The witness had never seen the hide which Dowling got from the defendant, and could not say that it was or was not the hide delivered by Freeman for the witness.

Dave Lowenstien testified, for the State, that in April, 1886, he was a butcher in the town of Greenville. The defendant worked for the witness for two or three days about the time of this alleged offense. Witness delivered a hide at the hide house of Johnson & Harris on the evening of April 23, 1886. Defendant was with witness when the delivery was made. The house was closed when witness and defendant arrived, the front door being locked, and the back door secured by a cross bar. Witness opened the back door with his knife, in the manner described by the first witness, defendant being present. Witness and defendant went into the house together. They found a green hide on the scales. They put the green hide to one side, and left witness's hide on the scales. Leaving, the witness fastened the back door in the way he found it. Witness and defendant then separated, and witness did not know where the defendant went. Witness did not help defendant skin a cow that they found dead in a bog a day or two before. The hide described was left at the hide house by witness and defendant on Friday night.

Aaron Freeman testified, for the State, that early on Saturday morning, as well as he could recollect, he delivered the hide described in the indictment, at the hide house of Mr. Dowling. Witness found the front door unlocked, went in with the hide, weighed it, took a memorandum of the weight to Mr. Dowling, and collected the money for Mr. Lankford. Witness left the front door fastened just as he found it—with a chain and padlock. Witness afterwards, on Saturday, saw Mr. Dowling hunting for the hide. He looked through Lowenstien's hides. On Sunday morning Mr. Dowling had the witness examine a certain hide, and the witness identified it as the hide he delivered for Mr. Lankford. The State closed, and, the defense offering no evidence, the case was given to the jury.

The motion for new trial raised the questions discussed in the opinion.

*Montrose & Grubbs*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellant's conviction in the lower court was had upon an indictment charging him with burglary. After conviction he assailed the sufficiency of the indictment by a motion in arrest of judgment upon the ground that there was no allegation negativing want of consent of the owner of the house to the burglarious entry. In Brown v. The State, 7 Texas Court of Appeals, 619, such allegation was said to be essential, but that case was expressly overruled on that point in Sullivan v. The State, 13 Texas Court of Appeals, 462; Reed v. The State, 14 Texas Court of Appeals, 662; Mace v. The State, 9 Texas Court of Appeals, 110; Buntain v. The State, 15 Texas Court of Appeals, 485; Langford v. The State, 17 Texas Court of Appeals, 445; Black v. The State, 18 Texas Court of Appeals, 124.

Appellant, in addition to his plea of not guilty, interposed a plea of former conviction and jeopardy, in that he had been tried, convicted and punished for the theft perpetrated in connection with the burglary herein charged against him; that the transaction out of which the two offenses grew was one and the same, and that the State could carve and hold him liable for but one offense growing out of a single transaction. It is a statutory provision that "if a house be entered in such manner as that the entry comes within the definition of burglary, and the person guilty of such burglary shall, after so entering, commit theft or any other offense, he shall be punished for burglary and also for what ever offense is so commited." (Penal Code, Art. 712.) The contention is that this statute is unconstitutional in that it renders nugatory the provision against twice in jeopardy. An answer to this position might be found in the fact that this article of the code was enacted by the Legislature on the twelfth of February, 1858, long before the adoption of either of our three last State Constitutions, and that said Constitutions were adopted with reference to it as part of the law of the land. But we do not propose to go anew into a discussion of this question. It was thoroughly discussed in Howard v. The State, 8 Texas Court of Appeals, 447, and, though it was admitted

in that case that the authorities were in conflict, it was held that burglary and theft committed in one and the same transaction could both be prosecuted and punished as separate offenses, though not as joint offenses. (See also Miller v. The State, 16 Texas Ct. App., 417.)

In *ex parte* Peters, 2 McCrary, 403, it is said: "According to the great weight of authority it may be regarded as settled that a person who breaks and enters a house with intent to steal therefrom, and actually steals, may be punished under separate indictments, for two offenses or one, at the election of the power prosecuting him. (1 Bish. Cr. Law, sec. 1062, and cases cited.) The case of Josslyn v. The Commmonwealth, 6 Metcalf (Mass.), 236, is directly in point. (See, also, State v. Ridley, 48 Ind., 370, and Breese v. The State, 12 Ohio St., 146.) The opposite view was ably stated by Chief Justice Waite, in his dissenting opinion in Wilson v. The State, 24 Connecticut, 57, and his reasoning is so strong that if it were a question of first impression I should be inclined to adopt his opinion. Looking, however, to the adjudicated cases, I find the law to be very well settled against the position assumed by counsel for the petitioner." (See same case reported in 12 Meyer's Fed. Dec., 2221.)

No proper diligence was shown to obtain the newly discovered testimony mentioned in the motion for a new trial, and it was not error to overrule it.

Because there is no error in the conviction, the judgment is affirmed.

*Affirmed.*